FILED

2009 Jun-26  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | } | |
| | } | |
| SCOTT MCDONALD and DENISE | } | |
| LYNN MCDONALD, | } | |
| | } | CIVIL ACTION NO. |
| Debtors, | } | 08-AR-2134-S |
| | } | |
| SCOTT MCDONALD and DENISE | } | |
| LYNN MCDONALD, | } | |
| | } | |
| Appellants, | } | |
| | } | |
| REDSTONE FEDERAL CREDIT | } | |
| UNION, | } | |
| | } | |
| Appellee. | } | |

### MEMORANDUM OPINION AND ORDER

Since 2001, the controversy between Redstone Federal Credit
Union ("Redstone") and Scott McDonald ("McDonald") has been before
so many different courts so many times that this court, the most
recent court to consider it, is amazed by the time and effort put
into it by the parties and by the various participating courts,
who, thus far, have not been able to put an end to it.  Whether
this court can provide the parties a resolution they will accept is
highly problematical.  The dispute is over approximately $7,000,
but based on the litigious history hereinafter outlined, the
dispute will not end until the parties obtain a final expression
from the Supreme Court of Alabama and/or from the Supreme Court of
the United States.

1

### The Sequence of Judicial Events

Not necessarily in the order of their importance, but in chronological order, the controversy has manifested itself in the following sequence of judicial and collateral proceedings:

(1)  On August 15, 2001, Redstone obtained a judgment against McDonald in the District Court of Madison County, Alabama, Case No. DV01-0784, in the sum of $6,819.28.  On August 24, 2001, Redstone recorded in the Probate Court of Madison County, Alabama, a certificate of judgment pursuant to Ala. Code § 6-9-210.  The certificate contained the requisite information required by the statute.  At that time, McDonald and his wife, Denise Lynn McDonald ("Mrs. McDonald") jointly owned a home located in Madison County ("the homestead").  The homestead was then subject to a mortgage or mortgages.  The homestead was, and still is, the McDonalds' residence.  On February 22, 2002, the District Court of Madison County issued a writ of execution upon the said judgment, ordering the seizure and sale of McDonald's interest.  On February 26, 2002, a notice of levy was served on McDonald by the Sheriff of Madison County, describing the homestead by metes and bounds and notifying McDonald that "whatever interest the defendant may possess . . . will be advertized according to law and sold unless said judgment is satisfied . . . ."

(2)  On March 25, 2002, McDonald and Mrs. McDonald jointly filed a verified Chapter 7 petition in the United States Bankruptcy

Court for the Northern District of Alabama, Case No.02-81388-JAC-7. In required Schedule C, the McDonalds listed their homestead as exempt property under 11 U.S.C. § 522(d)(1), stating its value at $68,000, with secured claims against it in the amount of $58,594.59. In Schedule F, they listed Redstone as an **"unsecured"** creditor, but did acknowledge that Redstone had a judgment against McDonald (not Mrs. McDonald) in the amount of $7,555.18.  If the judgment had been $107,558.18 instead of $7,555.18, that difference would have been irrelevant to this controversy.  The McDonalds said nothing in their petition that could constitute a suggestion, much less a concession, that Redstone had a valid lien on the homestead. The Bankruptcy Court appointed a Trustee.  Presumptively, a creditors' meeting was held.  Neither within thirty (30) days after the creditor's meeting nor at any other time prior to the discharge, did Redstone or the Trustee object pursuant to Bankruptcy Rule 4003, or otherwise, to the claim of exemption or to any factual allegations in the petition.  If an objection had been filed, the burden of proof would have been on the Trustee and/or Redstone to prove that the exemption claimed was not properly claimed.  Neither the McDonalds nor Redstone, in any way, shape, form or fashion, asked for a determination by the Bankruptcy Court of the effect, if any, on McDonald's title of the recording of the certificate of judgment.  In other words, the facts alleged in Schedules C and F were never challenged prior to July 22, 2002, the

date upon which the Bankruptcy Court granted a discharge to the McDonalds and closed the Chapter 7 case.

(3)  On September 3, 2003, the McDonalds moved the Bankruptcy Court to reopen the bankruptcy case for the purpose of allowing them to file a motion to avoid Redstone's alleged judgment lien. By logical inference, McDonald's motion was in reaction to a threat by Redstone to obtain a new writ of execution on the homestead. Redstone opposed the requested reopening of the bankruptcy case, arguing that it came too late and would prejudice Redstone. Finding that more than a year had elapsed since the discharge, and further finding that a reopening would prejudice Redstone, the Bankruptcy Court denied the McDonalds' motion to reopen.  This conclusion was based on laches.

(4)  After the Bankruptcy Court refused to reopen the bankruptcy case, Redstone did, in fact, obtain the anticipated new writ of execution.  The new writ was issued by the District Court of Madison County in its old Case No. DV01-0784.  McDonald thereupon filed a claim of exemption.  On February 10, 2004, the District Court of Madison County entered an order granting McDonald's claim of exemption and dismissing the writ of execution. Redstone did not contest McDonald's claim of exemption and did not appeal from the vacation of the writ of execution.  Redstone offers no explanation for its failure to object to or to appeal from the action taken by the same court that had granted the judgment.

(5)   Four years elapsed between the judicial activity in 2004 and the next judicial activity which occurred in 2008.  The volcano only appeared to be sleeping.

(6)   On  March  19,  2008,  the  McDonalds  refinanced  their existing  mortgage  or  mortgages  on  the  homestead,  executing  a mortgage  to  secure  a  loan  from  JP  Morgan  Chase  Bank,  NA.   The mortgage  incorporated  a  second  mortgage  to  Worldwide  Lending,  Inc. On  March  28,  2008,  Redstone,  suddenly  stimulated  to  action,  filed a  complaint  in  the  Circuit  Court  of  Madison  County,  Case  No.  CV-2008-462-JPS.   Redstone  describes  its  said  state  action  as  a judicial  foreclosure  proceeding,  apparently  brought  under  Ala.  Code § 6-9-211.   It  named  McDonald,  JP  Morgan  Chase,  and  Worldwide Lending  as  defendants.   The  Circuit  Court  of  Madison  County (hereinafter  "state  court")  became  the  third  court  (not  counting the  Probate  Court)  to  be  asked  to  contribute  to  a  resolution  of  the ongoing  dispute.   In  due  course,  McDonald  filed  a  motion  in  CV-2008-462-JPS  for  summary  judgment.   On  June  9,  2008,  after  briefing and  oral  argument,  the  state  court  granted  McDonald's  motion, without  opinion.   An  opinion  on  summary  judgment  is  not  required under  Alabama  procedural  rules.   Although  not  articulated,  it  was necessary  that  the  state  court  have  a  reason  for  granting  summary judgment.   This  court  cannot  know  the  state  court's  reason  or reasons,  but  this  court  can  easily  find  two  good  reasons.

The  first  good  reason  is  laches.   Seven  years  had  passed

between the recording of the certificate of judgment and the filing of Redstone's suit to enforce its alleged judgment lien, during which extended period of time there had been material changes in circumstances, such as the McDonalds' refinancing, and such as the disappearances of and/or the failing memories of witnesses who in 2002 could have credibly testified about the fair market value of the homestead in 2001 and/or 2002.  If Ala. Code § 6-9-211, the statute upon which Redstone relies for access to the state court, allows a judgment lien holder to wait as long as nine years and 364 days before filing suit, the statute constitutes a singular exception to the rule of laches that operates to bar other equitable claims under such circumstances.  Redstone's state action is, if anything, an equitable action.

A second possible explanation for the state court's ruling in favor of McDonald is, again, based on the action's being equitable in nature.  Equity cannot be invoked by a party who has an adequate remedy at law.  The right to judicial foreclosure that is recognized in § 6-9-211 is certainly an equitable remedy.  The inquiry into the availability of an adequate legal remedy for a lien holder is not rendered meaningless by the fact that the lien holder, who now invokes equity, has already **actually pursued a legal remedy**, but failed to pursue it to its logical conclusion. Does Redstone now mean to justify its failure to appeal from the District Court of Madison County's 2004 dismissal of its writ of

execution by claiming that it made a mistake in choosing that remedy? This court finds nothing in Redstone's brief that attempts to answer this question.  By having pursued a legal remedy, Redstone conceded its adequacy.

It is a matter of pure conjecture whether the state court actually employed either of the foregoing reasons for granting summary judgment to McDonald.  While indulging in conjecture, this court might as well point out that the state court, in theory, could have predicted and agreed in advance with the reasons this court will hereinafter give for its disagreement with the Bankruptcy Court.

As indicated, it is this court's humble opinion that the state court was correct when it granted McDonald's motion for summary judgment.  But, that was not the end of it.  After entry of the judgment for McDonald, Redstone, with new counsel, moved for a vacation of the judgment, alleging, *inter alia*, that if the judgment were allowed to stand "most consumer debt will become effectively uncollectible" (this is the "sky-is-falling" argument), and that "McDonald's 2002 tax appraisal indicates that the value of McDonald's property exceeded his mortgage and $5000 exemption by several thousands of dollars" (**this was the first time Redstone actually questioned the value that the McDonalds in 2002 had placed on the homestead**).  On September 16, 2008, the state court retreated from its earlier opinion, and granted Redstone's motion

to vacate, adopting, without elaboration, "the reasons set forth in Plaintiff's [Redstone's] motion". Consistent with the order of vacation, the state court reinstated the case, but stayed it pending the outcome of the same controversy in the Bankruptcy Court in the proceeding that, by then, had been reopened.

(7) On August 19, 2008, after Redstone filed its motion to set aside the state court judgment, but before that court had vacated its judgment, the McDonalds filed a motion in the Bankruptcy Court, again seeking to reopen the bankruptcy case, this time for the purpose of asking for a contempt citation against Redstone for violating the discharge, and seeking an injunction to stop Redstone from proceeding in the state court. Despite its refusal to reopen in 2003, the Bankruptcy Court, this time without any objection from Redstone, granted the McDonalds' motion to reopen. Thereafter, the Bankruptcy Court treated the matter as an adversary proceeding between McDonald and Redstone, paralleling the pending state action. In 2003, the Bankruptcy Court had found, after the lapse of one year, that laches barred a reopening. The same court in 2008, after the lapse of seven years, did not find laches as a bar, even though the McDonalds had refinanced between 2003 and 2008. Neither of the new mortgage lenders, JP Morgan Chase nor Worldwide Lending, was acknowledged as a necessary party to what the Bankruptcy Court treated as an adversary proceeding, although both lien holders clearly had an interest in the outcome,

and both were parties to the state action.  If the Bankrupty Court's opinion stands, the lien asserted by Redstone will undoubtedly be enforced by the state court, and will be superior to the JP Morgan Chase/Worldwide Lending mortgage.

Not only did the Bankruptcy Court not recognize laches as a bar in 2008, but it did not abstain in favor of the pending state action, a restraint it could have imposed upon itself pursuant to 28 U.S.C. § 1334(c)(1), which provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Instead of the federal court deferring to the state court as permitted by § 1334(c)(1), the state court is deferring to the federal court.  If the state court intends to defer ultimately to the federal court, it may be happy with this court's agreement with the order, now vacated, that granted summary judgment to McDonald.

On October 9, 2008, the Bankruptcy Court entered the order from which the McDonalds now appeal.  That order refused to enjoin Redstone from proceeding in the state court, giving two reasons: (1) that prior to the discharge in 2002, the McDonalds failed to move pursuant to 11 U.S.C. § 522(f) to avoid Redstone's lien, and (2) that in 2003 the McDonalds did not appeal from the order denying the motion to reopen, thus creating *res judicata*.  The Bankruptcy Court reasoned that Redstone's judgment lien, to the

extent it might have been deficient despite McDonald's failure to invoke § 522(f), was elevated to invulnerability by *res judicata*. The Bankruptcy Court held:

> The time for litigating whether or not Redstone's lien was voidable under § 522(f) has passed. As explained by the Eleventh Circuit in *Holloway v. John Hancock Mutual Life Ins. Co. (In re Holloway)*, 81 F.3d 1062, 1063 (11th Cir. 1996), the debtors' discharge did not affect in rem liability because the debtors failed to file a motion to avoid the lien in the original action.

In short, the Bankruptcy Court found that although the underlying debt had been discharged, Redstone's lien survived because it had not been avoided, and, to the extent it may not have survived, it was revived by the 2003 denial of a reopening, without a subsequent appeal by McDonald.  The Bankruptcy Court's reasoning is flawed in several respects.

If the McDonalds' failure to file a § 522(f) motion prior to discharge was dispositive, why would anything else be needed to make it dispositive?  Why would the later denial of a request to reopen for the purpose of filing a belated § 522(f) motion have added anything?  This court finds no Alabama case, and no federal case, in which the doctrine of *res judicata* was employed to confirm, or to reinforce, what the same court had **held earlier in the same case**.  If the doctrine of *res judicata* can be employed as the Bankruptcy Court employed it here, a few more refusals to reopen a case without subsequent appeals would **really** enhance the preclusive effect of the purported dispositive order.  *Res judicata*

is a doctrine of issue preclusion.  It prevents the relitigation of an issue between the parties when that issue has been decided in an earlier judicial proceeding between the same parties.  In 2003, the Bankruptcy Court was presiding in the **same case** over which it presided in 2002.  If it had reopened in 2003, had allowed McDonald to file a belated § 522(f) motion, and had denied the motion, the procedural posture would be different, but probably not enough different to make a difference.  As it is, the routine denial of the motion to reopen in 2003 had no adjudicative effect.

An example of a situation in which *res judicata* cannot be applied **in the same case** is found in a hypothetical attack by a losing party on a judgment pursuant to Rule 59, F.R.Civ.P.  If the losing party files an otherwise meritorious motion under Rule 59, seeking to set aside the adverse judgment he believes to have been erroneous, the trial court cannot simply deny the Rule 59 motion by citing *res judicata*, i.e., the existence of the final judgment. This would be the ultimate bootstrap.  This court, unsurprisingly, has found no case to support the proposition that a failure to appeal from an order denying a motion to reopen reinforces the legal effect of the denial or of the original judgment.  The denial had no legal effect in the first place.

The 2002 order of discharge meant whatever it meant in 2002. It could not be changed, denigrated, or improved upon by the refusal to reopen in 2003, even though the refusal was not

appealed.  If the McDonalds in 2003 had appealed from the refusal to reopen, the Northern District of Alabama, no matter what judge was assigned the case, would have affirmed the order as an entirely regular application of the doctrine of laches.  The Bankruptcy Court's discussion of *res judicata* only suggests that it perceived a need to bolster its conclusion that McDonald's failure to file a § 522(f) motion proved the continuing existence of a lien.

If this court agreed with the Bankruptcy Court, McDonald made a terrible error in making his second post-discharge approach to the Bankruptcy Court.  If this court adopted the Bankruptcy Court's novel application of *res judicata*, the state court could be bound by *res judicata* on top of *res judicata*.

A state court is just as competent to decide the issues of federal law that are necessary to its decision as is a federal court to decide issues of state law necessary to its decision.  Fortunately, this court is not called upon to decide several interesting questions of state law.  For instance, the statute upon which Redstone brings its state action provides no minimum bid for the foreclosure sale, provides no right to redeem, and gives no instruction as to what to do about Mrs. McDonald's right to occupy the premises after the divestiture of her husband's interest.  Her continued interest would obviously downwardly influence the offering price for McDonald's one-half interest, especially when the right-of-survivorship is considered.  Other interesting side

issues are:

> (1)  If McDonald's interest is bought at a court ordered public sale, can Mrs. McDonald's dispossessed husband continue to live with her in the house?

> (2)  Will the purchaser of McDonald's interest lose its interest if McDonald predeceases Mrs. McDonald?

> (3)  Can Mrs. McDonald call on the purchaser at foreclosure for his one-half of the *ad valorem* taxes and mortgage payments thereafter due?

> (4)  If the purchase price exceeds the amount necessary to satisfy Redstone's lien, does the excess go to McDonald or to the current mortgagee?

### What Should This Court Do, and Why?

The controversy has now reached this court, which is the fourth court (not counting the Probate Court) to touch it.  The District Court of Madison County dealt with it more than once.  The Bankruptcy Court dealt with it three times.  The state court is still dealing with it.  This court will now take its shot at it.

During the most recent treatment of the controversy by the Bankruptcy Court, Redstone proffered an unverified copy of the 2002 tax appraisal of the McDonalds' homestead, suggesting a 2002 market value of $103,400.  There was no ruling by the Bankruptcy Court on the admissibility of this evidence, because the Bankruptcy Court found such a ruling unnecessary.  It was not until 2008 that Redstone saw a need to challenge the McDonalds' 2002 verified claim that the fair market value of their homestead was $68,000.  The Bankruptcy Court did not rise to the bait.  Instead of undertaking a *de novo* trial of a dispute that did not exist in 2002, namely,

13

the fair market value of the homestead in 2001 (when the certificate of judgment was filed), or in 2002 (when the bankruptcy petition was filed), the Bankruptcy Court found the value issue to be moot.

If in 2008 the Bankruptcy Court had declined the McDonalds' second request to reopen, the state court would have received no federal guidance beyond what was a matter of record in the Bankrupty Court when the state action began.  The state court would have had to arrive at its final result without any help from the Bankruptcy Court, and this court would have thankfully been relieved of the responsibility it is now burdened with.

In 2008, the Bankruptcy Court, as a practical matter, accepted the invitation of the state court to reopen the bankruptcy case.  This court fully comprehends why, after that 2008 reopening, the Bankruptcy Court did not want to try *ab initio* the issue of the 2001 and/or 2002 fair market value.  A knock-down-drag-out trial of this illusive issue at such a late date would not have been a pretty sight.  Upon this empathetic note, this court starts its disagreement with the Bankruptcy Court by agreeing with it that there was and is no reason to try the issue of fair market value at this late date.  As the Bankruptcy Court found, the value issue has been adjudicated, **but not for the reasons assigned by the Bankruptcy Court, and with a different outcome**.

This court takes the controversy back to square one and square

14

two, skipping the squares in between.  It is anyone's guess what would have been the result in **2002** if the McDonalds had done what the Bankruptcy Court now says they should have done, namely, file an avoidance motion pursuant to § 522(f).  It is entirely possible that the Bankruptcy Court would have granted such an unnecessary motion.  No one will ever know.  Also, no one will ever know what the Bankruptcy Court would have done in **2003** if it had reopened the case and had allowed a belated filing of a § 522(f) motion.  The undisputed fact is, no matter its significance, that the McDonalds never filed a § 522(f) motion.  The Bankruptcy Court tentatively found this fact dispositive, but apparently in need of bolstering. **This court finds that the failure to file a § 522(f) motion in 2002 was not dispositive, or even relevant.  There are other facts, not discussed by the Bankruptcy Court, that are dispositive.**

The most pregnant undisputed fact is that the McDonalds' verified Chapter 7 petition in 2002 claimed their homestead as exempt under 11 U.S.C. § 522(d)(1), and stated, as **facts**, that the value of the homestead was $68,000, and that a mortgage lien or liens encumbered it to the extent of $58,594.59.  In Schedule C, by simple arithmetic, the McDonalds were asserting that their joint equity was $9,405.41 (the difference between $68,000 and $58,594.59), and that pursuant to Ala. Code § 6-10-2, McDonald, who owned a one-half interest in the homestead, enjoyed what is loosely described in Alabama as a "homestead exemption" of $5,000, which

is, of course, more than $4,702.70.  This is a dispositive **fact** that apparently escaped Redstone's attention in 2002, but that it wants to challenge in 2008.  It must be kept in mind that there is a distinction between the exemption provided by Bankruptcy Code § 522(d)(1), and the homestead exemption provided by Ala. Code § 6-10-2, although the two exemptions are both at play in this case. Perfectly consistent with the McDonalds' evaluation of their homestead and with the outstanding mortgage balance, the McDonalds in Schedule F listed Redstone as an **"unsecured"** creditor.  To describe Redstone as **"secured"** would have been to acknowledge the existence of a judgment lien.  Redstone neither objected to the evaluation, nor to the mortgage balance, nor to the claim of exemption, nor to the assertion that Redstone was an unsecured creditor.  Bankruptcy Rule 4003(b) requires a party in interest to object to any claim of exemption by a debtor within thirty (30) days after the first meeting of creditors and thereby to assume the burden of proving that the exemption was not properly claimed. Neither Redstone nor the Trustee filed any such objection.  After the discharge, the case was over, and Redstone was thereafter estopped to deny the truth of the dispositive facts alleged in the petition and necessarily incorporated by the Bankruptcy Court in the order of discharge.

To recapitulate, when the McDonalds asserted that Redstone was **"unsecured"**, while at the same time acknowledging the existence of

Redstone's judgment, McDonald was unequivocally denying the existence of a judgment lien, as will hereinafter be more carefully explained.  By no stretch of the imagination is an **unsecured** creditor a lien holder.  By not challenging this up-front assertion, Redstone abandoned the only opportunity it had to contest the value of the homestead and/or the mortgage balance. There was no reason or purpose in 2002 or 2003 for the McDonalds to file a motion pursuant to § 522(f).  Why seek to avoid a lien that did not exist?  The purpose of § 522(f) is to contest **disputed facts**, not to **create disputes**.

The foregoing overly lengthy preamble leads this court belatedly to explain, if it is not already clear, why the McDonalds were absolutely correct when they asserted that Redstone was "**unsecured**".  The statute that Redstone relies upon for the creation of a lien is Ala. Code § 6-9-211, which, in pertinent part, provides:

> Every judgment, a certificate of which has been filed as provided in Section 6-9-210, shall be a lien in the county where filed on **all property of the defendant which is subject to levy and sale under execution** . . . .

(emphasis supplied).

For any meaningful analysis of the problem before the court, § 6-9-11 must be read in conjunction with Ala. Code § 6-10-2, which, in pertinent part, provides:

> The homestead of every resident of this state, with the improvements and appurtenances, not exceeding in value

17

> $5,000 . . . . shall be, to the extent of any interest he
> or she may have therein, whether a fee or lesser estate
> or whether held in common or in severalty, **exempt from
> levy and sale under execution** or other process for the
> collection of debts during his or her life and occupancy
> . . . . When a husband and wife jointly own a homestead,
> each is entitled to claim separately the exemption
> provided herein.

(emphasis supplied).

The significance of these statutes was never treated by the Bankruptcy Court. The words "levy", "sale" and "execution" repeated in both statutes, have a plain meaning. This meaning is so plain that it is unnecessary to use any of the rules of statutory construction regularly used by the Supreme Court of Alabama to construe ambiguous statutes. **The statutory law of Alabama is that a judgment lien simply does not attach to any homestead in which the judgment debtor has less than a $5,000 equity at the time the certificate of judgment is recorded.** This indisputable proposition is derived from the juxtaposed reading of above-quoted Alabama statutes. The statutory language provides the final answer (subject to correction by a higher court) to the question that was before the Bankruptcy Court and that is now before this court.

To repeat for emphasis, if the McDonalds had filed a § 522(f) motion in 2002, the motion would have been in total contradiction to the straightforward and clear allegation that Redstone was an "**unsecured**" creditor. Again, why is this true? Because McDonald's

equity was less than $5,000.  The unchallenged physical facts set forth in the McDonalds' bankruptcy petition, plus the law of Alabama, Ala. Code §§ 6-10-2 and 6-9-211, preclude the attachment of a lien when Redstone recorded its certificate of judgment.

If there were any lingering doubt about McDonald's homestead being exempt "from levy and sale under execution" (the words employed in both pertinent Alabama statutes), the fact that the homestead is exempt from levy and sale under execution became a matter of *res judicata* when the District Court of Madison County in 2004, expressly found that McDonald's homestead was exempt from levy and sale under execution.  If *res judicata* is to play any part in the resolution of this controversy, the decision of the District Court of Madison County is where to find it.  The 2004 order dismissing the writ of execution elevated the **2002** unchallenged allegations, if not already solid and dispositive, to absolute truth.  If, as the District Court of Madison County found, and as McDonald asserted, the homestead was not subject to levy and sale under execution, no judgment lien could have attached.  The Bankruptcy Court erroneously employed the doctrine of *res judicata* to bolster a faulty conclusion.  This court's use of *res judicata* may be redundant, but it is a proper use of the doctrine.

The Bankruptcy Court never addressed the core question of whether a judgment lien actually attached to the homestead under Alabama law.  Either the Bankruptcy Court deliberately avoided this

question or just assumed that a lien existed.  If the Bankruptcy Court was traveling on the assumption that a lien existed, it was indulging a false assumption.

While speaking of assumptions, assuming that Ala. Code § 6-9-211, the statute under which Redstone is proceeding in the state court, creates a ten-year limitations period within which to file an action to foreclose a judgment lien, and assuming *arguendo* that a lien attached, the relief contemplated by the statute is nevertheless equitable in nature.  Arguably, laches is available as a defense when a purported judgment lien holder has sat on his cause of action somewhat less than the outside limit of ten years, during which time material changes in circumstances have taken place.  Indulging the assumption, **only for the sake of argument**, that a judgment lien was created, and not formally avoided, laches can act as a bar to its enforcement.  This, of course, will be a matter for the state court if it decides not to be bound by this court's interpretation and application of Alabama statutory law. It will be ironic if the state court finds itself bound by *res judicata* emanating from this court, and calling upon it to reinstate what it had vacated.

After the parties had fully briefed this appeal, but before oral argument, the Supreme Court of the United States granted a petition for *certiorari*, agreeing to review the opinion of the Third Circuit in *In re Reilly*, 534 F. 3d 173 (3rd Cir. 2008).  This

court will not digress to express its concern about the possible significance of *Reilly*.  The parties in the instant appeal were given an opportunity to supplement their briefs with any thoughts they might have on *Reilly*.  Neither party articulated any reason to worry about *Reilly*.  Redstone, however, did attempt to distinguish *Reilly* by pointing out that *Reilly* did not involve *res judicata*.  Neither does this case involve *res judicata*, except for the effect the 2004 order of the District Court of Madison County may have.

This court will not wait for the Supreme Court, because for this court to wait would further slow down the already extended process by which the parties have long sought a resolution of their $7,000 dispute.  Or, have the parties learned to enjoy this controversy so much that they eagerly look forward to the next round in the next court?

**Conclusion**

If McDonald's 2003 request to reopen the Chapter 7 case for the purpose of seeking the avoidance of a judgment lien was inconsistent with his earlier position that no lien existed, it was an innocuous mistake because the motion to reopen was **denied**. Because the denial had no adverse effect on Redstone, no estoppel against McDonald resulted.  Any appeal by McDonald from the denial in 2003 would have been quixotic.  To the contrary, when Redstone and the Trustee failed to challenge the facts that, on their face, clearly established that **no judicial lien ever existed**, Redstone

became estopped to claim that a lien existed. Redstone's resistance to the reopening in 2003 logically meant that it was contented with the 2002 result, whatever that result was. This court is now charged with the duty to inform the parties of what the 2002 result actually was.

Believing that it is now too late for Redstone to challenge McDonald's 2002 demonstration of the absence of a judicial lien, subsequent proceedings in the Bankruptcy Court were inefficacious. They added nothing except to exonerate Redstone from a charge of contempt, a ruling by the Bankruptcy Court that was an entirely proper exercise of the Bankruptcy Court's discretion under the circumstances. Simply because the discharge precludes an attack by Redstone in the Bankruptcy Court on the 2002 result, does not mean that the Bankruptcy Court was required to punish Redstone or to enjoin it from pursuing McDonald in state court. What the Bankruptcy Court would have done with the contempt and/or injunction requests if it had found in favor of McDonald on the merits, can only be guessed at. This court will not remand the case to find out. It will preempt these issues, probably creating an opportunity for McDonald to cross-appeal.

This court does not mean, by anything it has said, to be issuing instructions to the state court, except, perhaps by inference and at its implied invitation. The issues before the state court are issues to be decided by that court. If the state

court finds this court's decision to be binding upon it, Redstone can, of course, appeal to the Supreme Court of Alabama. This court means to address only the issues before it. At the risk of exceeding these bounds, this court, because it anticipates an appeal by Redstone to the Eleventh Circuit, makes one small suggestion to the state court. It may want to keep its stay in place and wait until the Eleventh Circuit decides whether the Bankruptcy Court is correct or this court is correct. That would save the parties from two appeals at once.

Meanwhile, insofar as the Bankruptcy Court held that Redstone is not in contempt and should not be enjoined from proceeding in the state court, the Bankruptcy Court's judgment is not erroneous and accordingly is AFFIRMED. The Bankruptcy Court is, however, REVERSED insofar as it held that a judgment lien exists on the homestead in favor of Redstone. No such lien exists. The Bankruptcy Court's purported judgment in that regard is VACATED.

The parties shall bear their own respective costs.

DONE this 26th day of June, 2009.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE